# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| SIGHTSOUND TECHNOLOGIES, LLC, | ) Civil Action No. 2:11-cv-01292-DWA |
|  | ) |
| Plaintiff, | ) Honorable Judge Donetta W. Ambrose |
| v. | ) |
|  | ) |
| APPLE INC., | ) JURY TRIAL DEMANDED |
| Defendant. | ) |
|  | ) |

**MEMORANDUM IN SUPPORT OF APPLE INC.'S MOTION TO STAY LITIGATION
PENDING "COVERED BUSINESS METHOD"
REVIEW OF U.S. PATENT NOS. 5,191,573 AND 5,966,440 BY THE
UNITED STATES PATENT & TRADEMARK OFFICE**

{01455413}

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................1

II.     STATEMENT OF FACTS......................................................................................4

        A.      Nature and Stage of the Proceedings......................................................4

        B.      The CBM Proceedings Will Likely Result in Cancellation or Amendment of the Asserted Claims................................................................6

III.    LEGAL STANDARD .............................................................................................8

IV.     ARGUMENT...........................................................................................................9

        A.      A Stay Will Simplify and/or Eliminate Issues In This Case and Streamline The Trial For Any Remaining Substantive Issues ...........................................9

        B.      A Stay is Appropriate Because Discovery Is Not Complete and A Trial Date Has Not Been Set..........................................................12

        C.      A Stay Will Not Unduly Prejudice SightSound or Provide Apple Any Tactical Advantage .......................................................13

                1.      SightSound Has Already Delayed its Litigation Against Apple.....................13

                2.      SightSound Will Not Be Harmed During the Duration of the CBM Review Proceedings ........................................14

        D.      A Stay Will Reduce The Burden Of The Litigation On The Court And The Parties .........................................................16

V.      CONCLUSION......................................................................................................18

[01455413]

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*01 Communique Lab., Inc. v. Citrix Sys., Inc.,*
    No. 06-cv-0253, 2008 U.S. Dist. LEXIS 19241 (N.D. Ohio Mar. 12, 2008) ..................................11

*Air Vent, Inc. v. Owens Corning Corp.,*
    No. 10-cv-01699, 2012 WL 1607145 (W.D. Pa. May 8, 2012) .........................................................12

*Brass Smith, LLC v. RPI Indus.,*
    No. 09-06344, 2010 U.S. Dist. LEXIS 116063 (D.N.J. Nov. 1, 2010) ...........................................14

*Convergence Tech. (USA) v. Microloops Corp.,*
    2012 U.S. Dist. LEXIS 51794 (N.D. Cal. April 12, 2012) ................................................................16

*Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co.,*
    No. 85 C 7565, 1987 U.S. Dist. LEXIS 15033 (N.D. Ill. Jan. 30, 1987).........................................15

*Ever Win Int'l Corp. v. Radioshack Corp.,*
    No. 11-1104, 2012 U.S. Dist. LEXIS 145559 (D. Del. Oct. 9, 2012) ..............................................15

*Grayling Indus., Inc. v. GPAC, Inc.,*
    No. 1:89cv451-ODE, 1991 U.S. Dist. LEXIS 16750 (N.D. Ga. Mar. 25, 1991) ............................13

*Jongerius Panoramic Tech. LLC v. Google, Inc.,*
    No. 4:12-cv-03797, (N.D. Cal. Apr. 29, 2013) ........................................................................... 17, 18

*Market-Alerts Pty. Ltd. v. Bloomberg Finance, L.P., et. al.,*
    Nos. 12-780, 12-781, 12-172, 12-783, 12-784, and 12-785, 2013 U.S. Dist. LEXIS 15300
    (D. Del. Feb. 15, 2013).................................................................................................................passim

*Neste Oil Oyj v. Dynamic Fuels LLC,*
    No. 12-662, 2013 U.S. Dist. LEXIS 13081 (D.Del. Jan. 31, 2013) ..............................................9, 15

*Progressive Cas. Ins. Co., v. Safeco Ins. Co.,*
    No. 1:11CV00082, 2013 U.S. Dist. LEXIS 54899 (Apr. 17, 2003) ..........................................passim

*Rembrandt Gaming Techs. v. Boyd Gaming Corp.,*
    No. 12--cv-00775, 2012 U.S. Dist. LEXIS 171199 (D. Nev. Dec. 3, 2012)....................................15

*SenoRX, Inc. v. Hologic, Inc.,*
    No. 12-173, 2013 U.S. LEXIS 8044 (D.Del. Jan. 11, 2013) ...........................................................10

*SightSound.com Inc. v. N2K, Inc.,*
    No. 2:98-cv-00118-DWA (W.D. Pa.) (Dkt. No. 1 & 4/3/2000 Order) ..............................................4

*SightSound Techs., LLC v. Roxio, Inc.*
No. 2:04-cv-01549-DWA (W.D. Pa.) (Dkt. No. 50)..................................................................... 11, 15

*SightSound Techs., LLC v. Roxio, Inc.,*
No. 2:04-cv-01549-DWA (W.D. Pa.) (Dkt. No. 1) ........................................................................4

*Tap Pharm. Prods. Inc. v. Atrix Labs.,*
No. 03C7822, 2004 U.S. Dist LEXIS 3684 (N.D. Ill. Mar 4, 2004) .................................................11

*TDY Indus. Inc. v. Ingersoll Cutting Tool Co.,*
No. 10-790, 2010 WL 3950789 (W.D. Pa. Oct. 7, 2010) ...............................................................11

*Textron Innovations Inc. v. Toro Co.,*
No. 05-486-GMS, 2007 WL 7772169 (D. Del. April 25, 2007) ......................................................12

**STATUTES**

35 U.S.C. § 18 ........................................................................................................................1

35 U.S.C. § 101 ......................................................................................................................1

35 U.S.C. § 102 ......................................................................................................................1

35 U.S.C. § 103 ......................................................................................................................1

35 U.S.C. § 112 ......................................................................................................................1

35 U.S.C. § 314 ......................................................................................................................7

35 U.S.C. § 321 ...................................................................................................................1, 5

**OTHER AUTHORITIES**

AIA § 18 ...............................................................................................................................5

37 C.F.R. § 42.207 .................................................................................................................7

37 C.F.R. § 42.5 ...................................................................................................................14

77 Fed. Reg. 48734, *available at*
http://www.uspto.gov/aia_implementation/fr_general_trial.pdf (Aug. 14, 2012)...........................2

77 Fed. Reg. 48616, *available at*
http://www.uspto.gov/aia_implementation/fr_general_trial.pdf (Aug. 14, 2012).............................8

77 Fed. Reg. 48757, *available at*
http://www.uspto.gov/aia_implementation/trial_practice_guide_48756.pdf (Aug. 14, 2012)..........................................................................................................................7

77 Fed. Reg. 48765, available at
    http://www.uspto.gov/aia_implementation/trial_practice_guideco_48756.pdf.8
    (Aug. 14, 2012) ..................................................................................................................16

157 Cong. Rec. S1363-64 (daily ed. Mar. 8, 2011)......................................................................2, 15

157 Cong. Rec. S1364 (daily ed. Mar. 8, 2011) ...................................................................... 15, 16

H.R. Rep. No. 112-98, 112th Cong., 1st Sess. 54 (June 1, 2011), *available at*
    http://www.gpo.gov/fdsys/pkg/CRPT-112hrpt98/html/CRPT-112hrpt98-pt1.htm...................5

Inter Partes Reexamination Statistics 2012 at 1, *available at*
    http://www.uspto.gov/patents/stats//IP_quarterly_report_June_30_2012.pdf...........................9

USPTO PTAB Trials Database, *available at* https://ptabtrials.uspto.gov/. .......................................6, 17

Apple Inc. ("Apple") respectfully submits this memorandum in support of its Motion to Stay Litigation pending "covered business method" ("CBM") review of U.S. Patent Nos. 5,191,573 ("the '573 Patent") and 5,966,440 ("the '440 Patent") by the United States Patent and Trademark Office ("PTO") pursuant to 35 U.S.C. § 321 and § 18 of the America Invents Act ("AIA").

## I.    INTRODUCTION

On May 6, 2013, Apple filed four separate petitions for CBM review: one for each of the '440 and '573 Patents on the grounds of invalidity under 35 U.S.C. §§ 102 and 103; one for the '440 Patent on the grounds of invalidity under 35 U.S.C. § 101 for failure to claim patentable subject matter and for obviousness-type double patenting; and one for the '573 Patent on the grounds of invalidity under 35 U.S.C. §§ 101 and 112.[1]  Since the Court's recent rulings on claim construction and Apple's supplemental invalidity contentions, Apple has worked expeditiously to prepare the CBM review petitions, which incorporate admissions made by SightSound's experts just 2 weeks ago.  Apple respectfully requests that the Court consider this motion on an expedited basis given the extensive resources being consumed by the parties as expert discovery continues.

The PTO's transitional program under the AIA provides for *inter partes* proceedings, including a special type of proceeding for CBM patents, that vary from the earlier *ex parte* reexamination procedures in several important respects.[2]  The PTO has granted trials on every

---

[1] Each petition and the accompanying declarations are approximately two hundred pages long, excluding the exhibits.  Thus, Apple has submitted only the introduction sections of each of the CBM petitions as Exs. A – D to this Motion, which briefly summarize the bases for CBM review. The complete CBM filings are publicly available on the PTO website.  To access the CBM petitions, go to http://www.uspto.gov/ip/boards/bpai/prps.jsp and click "Direct Link" hyperlink, and then enter one of the following "CBM2013-000##" as the Case Number to access the sought petition: first petition regarding the '573 Patent (Ex.  A), "CBM2013-00019"; second petition regarding the '573 Patent (Ex. B), "CBM2013-00020"; first petition regarding the '440 Patent (Ex. C), "CBM2013-00021"; and second petition regarding the '440 Patent (Ex. D), "CBM2013-00023."

[2] A patent is eligible for CBM review if it "claims a method . . . for performing data processing or other operations used in the practice, administration, or management of a financial product or service, except that the term does not include patents for technological inventions."  AIA § 18(d)(1).

patent challenged via CBM petitions in the decisions rendered to date.  In *inter partes* proceedings, 89% of the time the PTO has historically cancelled or amended at least some claims.  And, unlike in *ex parte* reexamination proceedings, Apple will be estopped, as of the time the Patent Trial and Appeal Board issues its final written decision, from later asserting in this litigation invalidity based on any ground on which a CBM trial was granted.[3]

To encourage use of the CBM petition proceedings and to avoid duplication of effort, Congress explicitly provided that district court litigation ***should be stayed*** pending PTO review of CBM patents, and even provided for immediate *de novo* interlocutory review by the Federal Circuit of stay decisions in such cases.  AIA § 18(b)(2).[4]  It was the intent of Congress to "place[] a ***very heavy thumb*** on the scale in favor of a stay being granted"; "[s]ince the entire purpose of the transitional program at the PTO is to reduce the burden of litigation, it is ***nearly impossible to imagine a scenario in which a district court would not issue a stay***."  157 Cong. Rec. S1363-64 (daily ed. Mar. 8, 2011); *see also Progressive Cas. Ins. Co., v. Safeco Ins. Co.*, No. 1:11CV00082, 2013 U.S. Dist.

---

"[T]he definition of covered business method patent was drafted to encompass patents 'claiming activities that are <u>financial in nature, incidental to a financial activity or complementary to a financial activity</u>." 77 Fed. Reg. 48734, 48735 *available at* http://www.uspto.gov/aia_implementation/fr_general_trial.pdf (Aug. 14, 2012).  As explained in Apple's CBM petitions, the patents-in-suit meet that standard.  The '440 states, for example, that "it is an objective . . .  to provide a new and improved methodology/system to <u>electronically sell</u> and distribute Digital Audio Music or digital video," '440 Patent at 2:22-25, and explains that "[t]he method comprises the steps of <u>transferring money</u> via telecommunications lines to the first party from the second party or electronically selling to the second party by the first party." '440 Patent at 5:46-49.  *See also* '573 Patent at 2:10-12; 5:33-38.  While the claims at issue reference certain conventional components of a general purpose computer, the '440 Patent is <u>not</u> a "technological invention" because it does not claim "subject matter as a whole [that] recites <u>a technological feature</u> that is novel and unobvious over the prior art[] and solves <u>a technical problem</u> using <u>a technical solution</u>." § 42.301(b).  *See* Exs. A – D.

[3] Based on the claims Apple has asserted in the CBM petitions, and assuming the PTO grants a trial on all issues raised in the four petitions, Apple anticipates that it would be estopped in the present litigation from arguing §§ 101, 112 (written description relating to "telecommunications lines"), and obviousness-type double patenting based on claim 3 of each of the '573 and '440 Patents.  Apple will still be able to argue invalidity under §§ 102 and 103 based on the references it did not include in its CBM petition.

[4] All emphasis herein is added unless otherwise indicated.

LEXIS 54899 (Apr. 17, 2003), at *11 ("the amendment which was the precursor to AIA § 18 was 'designed to provide a cheaper, faster alternative to district court litigation over the validity of business-method patents.'").

These policies apply here. A stay would serve judicial economy, streamline litigation disputes between the parties, and simplify the issues for trial if one is necessary. The parties are in the midst of expert discovery in this case, with two more rounds of expert reports due in May and June, expert depositions in June and July, and summary judgment briefing beginning in August. Unless this case is stayed, the parties will be making similar §§ 102 and 103 arguments,[5] and the very same §§ 101, 112, and obviousness-type double patenting arguments, in this Court and in front of the PTO at the same time. A stay in this case would reduce the burden on the Court and eliminate the potential waste of resources related to expert discovery and summary judgment motions concerning invalidity; and the parties could avoid concurrently conducting expert discovery and invalidity briefing in both forums.[6] Thus, this Court should grant a stay of this litigation (1) because of the high likelihood that the patent claims asserted in this litigation will be amended or cancelled, (2) because any remaining litigation will be streamlined once the CBM reviews are completed, and (3) because a stay would reduce the burden of this litigation on the parties and on the Court.[7]

Further, SightSound will not be unduly prejudiced by a stay. CBM reviews at the PTO are estimated to take a maximum of one and a half years. SightSound delayed over 8 years in bringing

---

[5] Although Apple is using different prior art in the CBM petitions than it is in the present litigation, it would not be surprising if SightSound were to use its expert(s) in this litigation for the CBM proceedings as well.

[6] The parties will likely take the depositions of at least some of the same experts, too. Apple's primary invalidity expert in this case submitted expert declarations in support of the four CBM petitions filed with the PTO.

[7] Because the '573 Patent has expired, its claims cannot be explicitly amended during the CBM proceedings. However, the arguments SightSound makes during the CBM proceedings may impact the scope of the claims. Further, like the claims in the '440 Patent, the claims of the '573 Patent may be cancelled during the CBM proceedings.

the present case, and has not sought any injunction against Apple.  (Dkt. No. 67 at 5-6).  SightSound is seeking only damages in the form of a reasonable royalty.  Apple is and will be able to pay any damages, if awarded, that accrue for the pendency of the CBM reviews.  Thus, SightSound will not suffer any material prejudice from a stay.

## II.    STATEMENT OF FACTS

### A.    Nature and Stage of the Proceedings

After initially threating to sue Apple for patent infringement in 2003, SightSound waited and watched the iTunes Music Store (the alleged infringing product in this case) grow for almost a decade before commencing this litigation.[8]  *Id.*  During that same time, SightSound engaged in two litigations with other defendants over infringement of the '573 and '440 Patents, as well as U.S. Patent No. 5,675,734 ("the '734 Patent").

The first case was filed in this Court on January 16, 1998 when SightSound's predecessor in interest, SightSound.com, Inc., sued N2K, Inc., CDNow, Inc., and CDNow Online Inc. for infringement of the '573, '734, and '440 Patents (the "N2K litigation").  *SightSound.com Inc. v. N2K, Inc.*, No. 2:98-cv-00118-DWA (W.D. Pa.) (Dkt. No. 1 & 4/3/2000 Order).  The N2K litigation concluded pursuant to a settlement agreement among the parties, and Final Judgment and Order was entered on February 20, 2004.  *Id.* (Dkt. No. 230).

Almost six months later, on October 8, 2004, SightSound sued Roxio, Inc. and Napster, LLC for infringement of the '573,'734 and, '440 Patents ("Roxio litigation").  *SightSound Techs., LLC v. Roxio, Inc.*, No. 2:04-cv-01549-DWA (W.D. Pa.) (Dkt. No. 1).  Even though Apple commercially launched the iTunes Music Store a year and a half before that time, SightSound chose to sue Roxio

---

[8] In addition, SightSound has believed since at least 2005 that Apple's iTunes business has been successful.  During the reexamination of the '573 patent, SightSound argued that "the success of Apple Computer Company with its download business, ITunes [sic]" showed commercial success of the '573 Patent.  Ex. E.

and Napster instead of Apple.   During that litigation, Roxio, Inc. and Napster, LLC filed requests for *Ex Parte* Reexamination of the '573,'734 and '440 Patents with the PTO and moved to stay the litigation pending the conclusion of the reexamination proceedings.   *Id.* (Dkt. No. 22).   This Court granted the motion to stay, and found that "[t]he three factors traditionally analyzed in determining whether to issue a stay - (1) whether a stay would unduly prejudice the non-moving party; (2) whether a stay would simplify issues for trial; and (3) whether the case has progressed beyond its initial stages - favor issuing the stay." *Id.* (Dkt. No. 50 at *2-3 (footnote omitted)).

During the reexamination, the claims of the '440 Patent were substantively amended.  And although the claims of the '573 Patent could not be amended because the patent expired during the reexamination proceedings, the claims were similarly narrowed in scope based on arguments made by SightSound during the proceedings.  Activities in the Roxio litigation resumed in October 2011, about 11 months after the reexamination proceedings concluded, because neither party informed the Court of their conclusion.   *Id.* (Dkt. No. 73).   The Roxio litigation concluded on May 7, 2012, when this Court granted the parties' stipulation of dismissal with prejudice.   *Id.* (Dkt. No. 114).

The present case is the third case in SightSound's trilogy of patent infringement litigations before this Court.  SightSound sued Apple for infringement of the '573,'734, and '440 Patents on October 10, 2011—over eight years after the launch of the iTunes Music Store, over 13 years after SightSound began the N2K litigation..  (Dkt. No. 1).  This Court has already ruled that all of the asserted claims of the '734 Patent, as well as the majority of the asserted claims of the '440 Patent, are invalid.  (Dkt. No. 175).  Only seven asserted claims from the '573 and '440 Patents remain in this case, all of which are method claims that fall with the PTO's definition of "covered business method" claims.

Apple filed CBM petitions with the PTO for the review of all seven remaining claims of the '573 and '440 Patents on May 3, 2013, pursuant to 35 U.S.C. § 321 and AIA § 18.  Apple asserts that

it is more likely than not that at least one—if not all—of the seven remaining claims in this case will be declared unpatentable.

### B.   The CBM Proceedings Will Likely Result in Cancellation or Amendment of the Asserted Claims

Due to concern over the large number of business method patents of questionable validity that are clogging the court system, Congress included the new CBM review proceedings as part of the AIA.   H.R. Rep. No. 112-98, 112th Cong., 1st Sess. 54 (June 1, 2011), *available at* http://www.gpo.gov/fdsys/pkg/CRPT-112hrpt98/html/CRPT-112hrpt98-pt1.htm.   To encourage use of the CBM petition proceedings and to avoid duplication of effort, Congress explicitly indicated that district court litigation ***should be stayed*** pending PTO review of CBM patents, and even provided for immediate *de novo* interlocutory review by the Federal Circuit of stay decisions in such cases.   AIA § 18(b)(2) ("A party may take an immediate interlocutory appeal from a district court's decision [regarding a request for stay].   The United States Court of Appeals for the Federal Circuit shall review the district court's decision to ensure consistent application of established precedent, and such review may be de novo.")   The first CBM petitions were filed on September 16, 2012, when the procedure for CBM review took effect.

The new system of CBM reviews differs from the earlier system of PTO reexaminations in several important respects.   Most significantly, CBM patent reviews are *inter partes* proceedings. Apple therefore will have the ability to participate in the process and respond to SightSound's arguments.   These proceedings will be more like litigation than the former *ex parte* reexamination proceedings in that they will allow for briefing by both sides, a hearing, and even some limited discovery.   These several procedural enhancements will limit the ability of patentees, as often occurs in *ex parte* reexaminations, to wear down and overcome an examiner's initially unfavorable determination through repeated, limitless, one-sided meetings.   Also, the new proceedings will take place before a panel of three administrative patent judges on the Patent Trial and Appeal Board

{01455413}

("PTAB"), who are specifically trained for the purpose, and who must promptly complete the proceedings.  Finally, because Apple will be able to participate in these CBM patent reviews, Apple will be estopped from arguing in this litigation that a claim is invalid based on any ground raised by Apple on which a CBM trial was granted.  *See id.* § 18(a)(1)(D).  This estoppel takes effect as soon as the PTAB issues its final written decision, even before any appeals are taken.  *Id.*

Apple's CBM petitions cover all seven of the remaining asserted claims in this case.  It is likely that the PTO will institute review of Apple's petitions within four to five months of filing.[9]  In no case will it take the PTO longer than six months to determine whether to institute review.  Pursuant to the statutory framework, SightSound will have up to three months from the date of filing to file a preliminary response to each petition if it so desires.  If SightSound wishes to expedite the process, it may either forego that preliminary response or file it prior to the three-month deadline.  37 C.F.R. § 42.207(b) ("A patent owner may expedite the proceeding by filing an election to waive the patent owner preliminary response").  The PTO must decide within three months of SightSound's preliminary response, if any, whether "there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition," and thereby determine whether to institute the CBM review.  37 C.F.R. § 42.207; 35 U.S.C. § 314.  Thus, a decision concerning the viability of Apple's CBM petitions should be known by this fall at the latest.  The PTO's ultimate decision regarding Apple's petitions **must be completed within a year** of the PTO instituting the petitions.[10]

---

[9] The PTO instituted review of every patent challenged  in the decisions rendered to date and has instituted that review within the statutory time frame.  *See* PTO PTAB Trials Database, *available at* https://ptabtrials.uspto.gov/.

[10] CBM review is statutorily required to complete within one year of institution, except that the time may be extended up to six months for good cause.  Office Patent Trial Practice Guide, 77 Fed. Reg. 48756, 48757 a*vailable at* http://www.uspto.gov/aia_implementation/trial_practice_guide_48756.pdf (Aug. 14, 2012); Rules of Practice for Trials Before the Patent Trial and Appeal Board and  Judicial Review of Patent Trial and Appeal Board Decisions, 77 Fed. Reg. 48612, 48616, *available at*

## III.     LEGAL STANDARD

The AIA explicitly provides four statutory factors that the Court should consider in determining whether to enter a stay relating to a transitional proceeding:

(A)      whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial;

(B)      whether discovery is complete and whether a trial date has been set;

(C)      whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and

(D)      whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court.

AIA § 18(b). "Proceeding" has been interpreted in this context to refer to the filing of the CBM petition, not subsequent institution of the review by the PTO. *Market-Alerts Pty. Ltd. v. Bloomberg Finance, L.P., et. al.*, Nos. 12-780, 12-781, 12-172, 12-783, 12-784, and 12-785, 2013 U.S. Dist. LEXIS 15300, at *9-10 (D. Del. Feb. 15, 2013) (granting motion to stay litigation **before** the PTAB decided whether to institute CBM review).  In other words, "the relevant stay provisions apply when the petition is first filed." *Id.*

Courts have held that the test provided by the AIA for stays during CBM review resembles the stay analysis applied in *inter partes* and *ex parte* reexaminations by the PTO but with one key distinction: "The substantial difference between the test set forth in § 18(b)(1) and that employed by courts in the ordinary patent reexamination context is the inclusion of a fourth factor, which requires the court to consider 'whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court.' § 18(b)(1)(D)  Congress added this factor, in part, to **ease**

_____

http://www.uspto.gov/aia_implementation/fr_general_trial.pdf (Aug. 14, 2012).  The PTO has not provided an extension for CBM review of any petition that has been filed to date.

*the movant's task of demonstrating the need for a stay*."  *Market-Alerts Pty. Ltd.*, at *6-7 (footnote omitted); *see also Progressive Cas. Ins. Co.*, at *12 ("In sum, the test established by the AIA is designed to *increase the likelihood that a stay will be granted . . . .*").  The test for stay "properly emphasizes a fourth factor that is often ignored by the courts: 'whether a stay will reduce the burden of litigation on the parties and on the court.'  Too many district courts have been content to allow litigation to grind on while a reexamination is being conducted, forcing the parties to fight in two forums at the same time.  This is unacceptable, and would be *contrary to the fundamental purpose of the [test] to provide a cost-efficient alternative to litigation*."  *Market-Alerts Pty. Ltd.*, at *6-7 (citing Senator Schumer's explanation for the purpose of the fourth factor).

## IV.   ARGUMENT

### A.     A Stay Will Simplify and/or Eliminate Issues In This Case

A stay will simplify the issues in question and streamline, or even eliminate, the trial.  By granting a stay pending the PTO's review, the Court will avoid the expenditure of considerable effort that likely would be rendered moot by the outcome of the CBM patent review.  Although statistics concerning CBM reviews are not yet available, the PTO has historically **cancelled** all claims of a patent 42% of the time and **either cancelled or amended** at least some claims 89% of the time in *inter partes* proceedings.  Inter Partes Reexamination Statistics 2012 at 1, *available at* http://www.uspto.gov/patents/stats//IP_quarterly_report_June_30_2012.pdf.   And "[b]ecause it appears virtually certain that the landscape of [this] litigation will be significantly different following the PTAB proceeding, it is *wasteful to now engage in litigation* over patent claims that are likely to be altered or invalidated in the course of CBM review."  *Progressive Cas. Ins. Co.*, at *16; *see also Neste Oil Oyj v. Dynamic Fuels LLC*, No. 12-662, 2013 U.S. Dist. LEXIS 13081, at *15-16 (D.Del. Jan. 31, 2013) (granting motion to stay and finding that, because it is reasonable that at least some of the claims at issues will be cancelled, "the litigation necessarily will be simplified.");  *Market-Alerts Pty.*

*Ltd.*, at \*11-21 (granting motion to stay and stating that the simplification factor weighed in favor of a stay because the court "believe[d] there is ***at least a reasonable chance*** that the PTAB will ultimately invalidate or cause [the patentee] to amend some or all of the claims" and thus simplify the litigation "regardless of the scope limitations of the CBM review."); s*ee SenoRX, Inc. v. Hologic, Inc.*, No. 12-173, 2013 U.S. LEXIS 8044, at \*8-15 (D.Del. Jan. 11, 2013) (granting motion to stay and finding the simplification factor to weigh in favor of a stay, "considering the ***statistical likelihood*** that reexamination will result in an altered claim landscape.").

Apple's petitions are likely to succeed because they raise grounds for invalidity that were not substantively considered by the PTO during prosecution or reexamination of those patents.  Apple's §§ 102 and 103 petitions include specific bases for invalidity that was not previously cited to or considered by during prosecution or reexamination of the '440 Patent, as well as material that was cited but never discussed.  Apple's petitions related to §§ 101, 112, and obviousness-type double patenting present issues that were never substantively considered by the PTO.

A stay in infringement actions pending review of a patent's validity by the PTO can simplify litigation at the district court in numerous ways:

> "(1) all prior art presented to the court at trial will have been first considered by the PTO with its particular expertise, (2) many discovery problems relating to the prior art can be alleviated, (3) if [the] patent is declared invalid, the suit will likely be dismissed, (4) the outcome of the [administrative review] may encourage a settlement without further involvement of the court, (5) the record of the [administrative review] would probably be entered at trial, reducing the complexity and the length of the litigation, (6) issues, defenses, and evidence will be more easily limited in pre-trial conferences . . . ."

*Market-Alerts Pty. Ltd.*, at \*11 (citation omitted); *see also Progressive Cas. Ins. Co.*, at \*15 (citation omitted).  By staying this action, the Court will also gain the "benefit of an expert in the field's take on the prior art," in addition to the potential that the infringement issues in this case will be mooted. *SightSound Techs., LLC v. Roxio, Inc.*, No. 2:04-cv-01549-DWA (W.D. Pa.) (Dkt. No. 50 at \*3-4)

(granting stay pending reexamination of the patents at issue). Further, in conjunction with the CBM proceedings, validity positions taken by SightSound will likely help narrow or define the scope of the claims, which in turn would assist any future infringement and invalidity determination by the jury here. *TDY Indus. Inc. v. Ingersoll Cutting Tool Co.*, No. 10-790, 2010 WL 3950789, at *1 (W.D. Pa. Oct. 7, 2010) (granting motion to stay on the grounds that*, inter alia,* the stay would simplify the disputed issues because the validity questions before the PTO are similar to those before the district court).

If the PTO cancels all asserted claims, the Court can immediately dismiss the case. If the PTO cancels only some of the asserted claims, it will still greatly simplify the litigation because validity determinations will be less costly to litigate. *01 Communique Lab., Inc. v. Citrix Sys., Inc.*, No. 06-cv-0253, 2008 U.S. Dist. LEXIS 19241, at *6 (N.D. Ohio Mar. 12, 2008) (citing *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983)).

A stay also would be beneficial if the PTO modifies claims instead of canceling them outright. Without a stay, the Court and the parties risk engaging in costly and time consuming litigation concerning claim language that ends up being moot. *Tap Pharm. Prods. Inc. v. Atrix Labs.*, No. 03C7822, 2004 U.S. Dist. LEXIS 3684, at *6-7 (N.D. Ill. Mar 4, 2004). Moreover, a stay would streamline litigation even in the unlikely event that the patents-in-suit emerge unchanged because Apple will be estopped from asserting that a claim is invalid based on any ground raised during the CBM proceedings for which the PTO provides a final decision. AIA § 18(a)(1)(D). This first factor, therefore, weighs in favor of staying the litigation.

Further, under the procedures for CBM petitions, the PTO will likely begin making its initial decisions on the patents in September or October, and in no event later than November. The reexamination will be completed no later than a year thereafter. If a stay is denied, given the schedule in this case, expert discovery and summary judgment briefing would be concurrently proceeding during that same time period. Staying the litigations while certain of Apple's invalidity

defenses are briefed and argued in the PTO will save the Court and parties resources regardless of the outcome of those proceedings.

> **B.      A Stay is Appropriate Because Discovery Is Not Complete and A Trial Date Has Not Been Set**

The second factor—whether discovery is complete and whether a trial date has been set— also weighs in favor of a stay.   Expert discovery is not yet complete—the parties have yet to exchange the second and third rounds of expert reports and have not conducted any expert depositions.  Further, trial has not been scheduled.  *See Textron Innovations Inc. v. Toro Co.*, No. 05-486-GMS, 2007 WL 7772169, at *1-3 (D. Del. April 25, 2007) (ordering stay two months before trial and noting that the case was not the first in which the court granted a stay within a few months of a scheduled trial).  Summary judgment motions also have not yet been filed.  *See Air Vent, Inc. v. Owens Corning Corp.*, No. 10-cv-01699, 2012 WL 1607145, at *3 (W.D. Pa. May 8, 2012) (granting motion to stay and noting that the series of summary judgment motions to be filed in the case would "require a tremendous amount of time and effort," which supported that the "effect on the trial schedule factor" weighed in favor of a stay).  This factor, therefore, also weighs in favor of a stay.

Although a stay of litigation is sometimes denied if the moving party has unnecessarily delayed in filing for PTO review or for a stay after a PTO has been requested, no such delay is present here.  There were outstanding, dispositive questions affecting the parties' positions regarding the three originally-asserted patents until mid-April 2013.  Through April 2013, substantive litigation between the parties impacted the identity of the asserted claims and asserted patents, and the prior art at issue, in the case.  The Court issued a claim construction adopting the Report and Recommendation of the Claim Construction Special Master on February 13, 2013.  (Dkt No. 175).  On February 14, 2013, the Court affirmed its January 17, 2013 decision precluding SightSound from asserting new claims.  (Dkt. No. 179)  As a result of the February 13 and 14 rulings, the present case went from including three patents and 94 asserted claims to only two patents (the '573 and '440

Patents) and seven asserted claims—all of which are method claims that fall within the PTO's definition of "covered business method" claims.   On April 11, 2013, the Court issued an Order granting in part and denying in part SightSound's Motion to Strike Apple's supplemental invalidity contentions.  (Dkt. No 194).  Since then, Apple has worked diligently to prepare the four CBM petitions it filed and efficiently use the forums available to Apple to address SightSound's claims. Indeed, Apple's CBM petitions include admissions made by SightSound via its expert reports, which were served on April 22, only 2 weeks before the filing of the CBM petitions and this motion.

Any time elapsed between when Apple could have filed its CBM petitions and now is negligible compared to SightSound's delay in bringing the present litigation.  Further, this motion for stay is being filed on the same day that the CBM petitions were filed.  Stays are regularly granted for defendants who display far less diligence.  *See, e.g., Grayling Indus., Inc. v. GPAC, Inc.*, No. 1:89cv451-ODE, 1991 U.S. Dist. LEXIS 16750, at *6-7 (N.D. Ga. Mar. 25, 1991) (granting stay despite a two-year delay before requesting reexamination and even though it was "not clear that Plaintiffs had good reason for the delay").

### C.   A Stay Will Not Unduly Prejudice SightSound or Provide Apple Any Tactical Advantage

#### 1.   SightSound Has Already Delayed its Litigation Against Apple

Despite SightSound's claimed belief since 2003 that Apple's iTunes store infringed and that Apple's iTunes store was a commercial success, SightSound waited until 2011—over 8 years—to bring the present litigation.  Ex. E and (Dkt. No. 67 at 5-6).  In the interim, SightSound asserted these same patents in suits against two smaller defendants (N2K and Roxio/Napster)—but it chose, apparently for strategic reasons, to wait to sue Apple.  When the plaintiff fails to act with urgency,

there is little risk of prejudice.[11]  *Allied Erecting*, 2010 U.S. Dist. LEXIS 92851, at *7.  In addition, courts do not consider mere potential delay associated with a stay as sufficient prejudice to deny a motion to stay.  *Brass Smith, LLC v. RPI Indus.*, No. 09-06344, 2010 U.S. Dist. LEXIS 116063, at *7-13 (D.N.J. Nov. 1, 2010) (finding that the "delay attendant to a stay is not sufficiently prejudicial to [constitute undue prejudice] . . . to warrant denying [the motion to stay pending reexamination].") The "potential for delay, does not, by itself, establish **undue** prejudice."  *Market-Alerts Pty. Ltd.*, at *6-7 (citations omitted, emphasis original).

Further, given the likelihood that the PTO will initiate the CBM proceedings in four to five months, and in no case more than six months, and the fact that the PTO is required to complete the proceeding within a year of granting the petitions, any addition of time to the resolution of this case will be minimal.[12]

## 2.   SightSound Will Not Be Harmed During the Duration of the CBM Review Proceedings

SightSound's decision not to seek any injunction additionally demonstrates that any delay will not cause it undue prejudice, especially since SightSound does not practice any of its patents.  *Ever Win Int'l Corp. v. Radioshack Corp.*, No. 11-1104, 2012 U.S. Dist. LEXIS 145559, at *7 (D. Del. Oct. 9, 2012) (stating that plaintiff's decision not to seek a "preliminary injunction . . . suggests that

---

[11] Although this Court has ruled that SightSound's delay in suing Apple did not warrant a finding of undue and inexcusable delay for finding laches, that delay nonetheless reflects that a stay would not unduly prejudice SightSound for purposes of a motion to stay litigation.

[12] While the PTO can extend this time period by an additional six months in extreme cases, it is unlikely to do so here.  Apple's petitions should take no more time to review than the other CBM petitions that have been filed to date, and the PTO has never extended the one year period for any CBM petition.  If SightSound wishes to expedite the CBM proceedings, it may file its preliminary amendment promptly, thus guaranteeing that the proceedings will be completed in less than 18 months.  Further, the PTO has previously *sua sponte* shortened the three month period for filing the preliminary amendment.  *SAP America, Inc. v. Versata Development Group, Inc.*, CBM2012-0001, Order Setting Time for Filing Patent Owner Preliminary Response 37 C.F.R. § 42.5, Paper No. 10 (October 17, 2012) (Ex. F).

any prejudice . . . that might result from delaying the ultimate resolution of this dispute is not as severe as [plaintiff] contends."); s*ee Neste Oil Oyj*, at *7-9 (holding that plaintiff's decision not to seek a preliminary injunction shows that granting a stay would not cause it undue prejudice); *see Rembrandt Gaming Techs. v. Boyd Gaming Corp.*, No. 12-cv-00775, 2012 U.S. Dist. LEXIS 171199, *5-8 (D. Nev. Dec. 3, 2012) (granting stay and finding that plaintiff's decisions to neither seek a permanent injunction nor practice the patent at issue indicates that there is "no viable threat of prejudice . . . should a stay issue.")   By deciding neither to seek any injunction nor to practice its patents, SightSound has demonstrated that monetary damages are adequate to compensate it if post-stay infringement is found.  *See Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co.*, No. 85 C 7565, 1987 U.S. Dist. LEXIS 15033, at *5-6 (N.D. Ill. Jan. 30, 1987).

This Court has already addressed similar issues in the SightSound/Roxio litigation, finding that SightSound's one and a half year delay before seeking injunctive relief supported the Court's finding that any harm to SightSound from a stay can be financially compensated.  *SightSound Techs., LLC v. Roxio, Inc.*, No. 2:04-cv-01549-DWA (W.D. Pa.) (Dkt. No. 50 at *3). ("Sightsound's contention is belied by the fact that it delayed seeking injunctive relief for nearly one and one half years after discovering the Defendants' alleged infringing activity.  Further, **while Sightsound [sic] may suffer some harm if the action is stayed, that harm is not irreparable in nature**.").  Here, if SightSound's patents emerge from CBM patent review unscathed, and if Apple is found to have infringed, SightSound will be able to recover any damages that accrued while the reexamination was pending.  *See Magna Donnelly*, 2007 U.S. Dist. LEXIS 17536, at *18.

Furthermore, SightSound cannot complain about having to defend a CBM petition in the PTO.  As another court has observed, "parties having protection under the patent statutory framework may not 'complain of the rights afforded to others by that same statutory framework.'" *Convergence Tech. (USA) v. Microloops Corp.*, 2012 U.S. Dist. LEXIS 51794, at *8 (N.D. Cal. April 12,

[01455413]

2012) (quoting *AT&T Intellectual Prop. I v. TiVo, Inc.*, 774 F. Supp. 2d 1049, 1054 (N.D. Cal. 2011)). "[J]ust as Plaintiff was entitled to institute this litigation under federal patent law, Defendants are entitled to invoke the reexamination process." *Id.*

Based on the foregoing, no undue prejudice to SightSound would result from a stay of this litigation pending the resolution of the CBM proceedings. The litigation of SightSound's patents has already spanned more than a decade before this Court because of SightSound's own litigation strategy. Moreover, any harm SightSound may suffer from a short delay in resolving this case can be adequately compensated by money if infringement is found. This third factor also weighs in favor of granting a stay.

### D.    A Stay Will Reduce The Burden Of The Litigation On The Court And The Parties

The fourth factor is whether a stay will reduce the burden of litigation on the parties and on the Court; there is no question that a stay here would reduce those burdens. AIA § 18(b). This factor was "enacted to increase the likelihood that a stay would be granted" pending CBM review. *Progressive Cas. Ins. Co.*, at *28 (citation omitted); 157 Cong. Rec. S1364 (daily ed. Mar. 8, 2011) ("It is congressional intent that **a stay should only be denied in extremely rare circumstances**."). In fact, the purpose of the fourth factor is to "place[] a **very heavy thumb** on the scale in favor of a stay being granted," such that "[s]ince the entire purpose of the transitional program at the PTO is to reduce the burden of litigation, it is **nearly impossible to imagine a scenario in which a district court would not issue a stay**." 157 Cong. Rec. S1363-64 (daily ed. Mar. 8, 2011); *see also Progressive Cas. Ins. Co.*, at *11-12 ("Senator Schumer stated that the amendment which was the precursor to AIA § 18 was 'designed to provide a cheaper, faster alternative to district court litigation over the validity of business-method patents.'") (citations omitted); *Market-Alerts Pty. Ltd.*, at *27-29. Thus, "it is expected that, if a proceeding against a business method is instituted, the district court would institute a stay of litigation **unless there were an extraordinary and extremely**

{01455413}

-16-

*rare set of circumstances* not contemplated in any of the existing case law related to stays pending

reexamination."  157 Cong. Rec. S1364 (daily ed. Mar. 8, 2011).  *See also Progressive Cas. Ins. Co.*, at

\*28-29 (citation omitted) ("This Court would be relieved of having to expend substantial judicial

resources in deciding claim construction, non-infringement, and invalidity issues before those claims

are invalidated, narrowed, or refined through CBM review").[13]  Given the public policy on which the

CBM review is founded, and the alleviation of future burden on the Court and the parties, this

factor heavily weighs in favor of a stay.

Further, as discussed above in section IV.A, because expert discovery and summary

judgment briefing is scheduled to occur in the next six months, a stay will avoid wasteful duplication

of efforts.  *Market-Alerts Pty. Ltd.*, at \*9-10 (granting motion to stay litigation **before** the PTAB

decided whether to institute CBM review); *see also Jongerius Panoramic Tech. LLC v. Google, Inc.*, No.

4:12-cv-03797, slip op. at 1 (N.D. Cal. Apr. 29, 2013) (granting Stipulation to Stay Litigation Pending

the Outcome of *Inter Partes* Review before *Inter Partes* Review was implemented) (Ex. G; *see also*

*Jongerius Panoramic Tech. LLC v. Google, Inc.*, No. 4:12-cv-03797, Stipulation To Stay Litigation Pending

The Outcome of Inter Partes Review (N.D. Cal. Apr. 12, 2013) (Dkt. No.155) (Ex. H)).[14]

---

[13] This Court previously granted a motion to stay litigation involving the '573 and '440 Patents under similar circumstances, even without consideration of this important fourth factor.  The Court found that "[t]he three factors traditionally analyzed in determining whether to issue a stay - (1) whether a stay would unduly prejudice the non-moving party; (2) whether a stay would simplify issues for trial; and (3) whether the case has progressed beyond its initial stages - favor issuing the stay."  *SightSound Techs., LLC v. Roxio, Inc.* (Dkt. No. 50 at \*2-3).  There, in addressing reexamination proceedings in the Roxio litigation, this Court recognized that the purpose of PTO patent reviews is to "'permit efficient resolution of questions about the validity of issued patents without recourse to expensive and lengthy infringement litigation.'"  *Id.* (Dkt. No. 50 at \*2).

[14] To institute review, the PTAB need decide only two issues: (1) that the petitioner has standing; and (2) that "it is more likely than not that at least one claim challenged is unpatentable."  Office Patent Trial Practice Guide, 77 Fed. Reg. 48756, 48765, *available at* http://www.uspto.gov/aia_implementation/trial_practice_guide_48756.pdf (Aug. 14, 2012).  It is highly likely that the petition will be granted because, as described in the petitions, Apple has standing to file the petitions and it is more likely than not that at least one (and, in fact, all) of the

**V.     CONCLUSION**

For the foregoing reasons, Apple respectfully requests that this Court stay litigation immediately and until the PTO completes the review of Apple's four "covered business method" patent review petitions of the '573 and '440 Patents.

---

challenged claims will be held unpatentable.  *See* Exs. A – D.   Further, to date, the PTO has instituted CBM review of every patent challenged in the decisions rendered to date.

Respectfully submitted,

Dated: May 6, 2013

_____

James R. Batchelder (Admitted Pro Hac Vice)
 james.batchelder@ropesgray.com
**ROPES & GRAY LLP**
1900 University Avenue, 6th Floor
East Palo Alto, CA 94303-2284
Phone: (650) 617-4000
Facsimile: (650) 617-4090

Ching-Lee Fukuda (Admitted Pro Hac Vice)
 ching-lee.fukuda@ropesgray.com
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, NY 10036
Phone: (212) 596-9000
Facsimile: (212) 596-9090

Megan F. Raymond (Admitted Pro Hac Vice)
 megan.raymond@ropesgray.com
**ROPES & GRAY LLP**
One Metro Center
700 12th St NW Ste 900
Washington, DC 20005-3948
Phone: (202) 508-4600
Facsimile: (202) 508-4650

/s/ Danny P. Cerrone, Jr.
Robert J. Ridge
 rridge@clarkhillthorpreed.com
William M. Wycoff
 wwycoff@clarkhillthorpreed.com
Danny P. Cerrone, Jr.
 dcerrone@clarkhillthorpreed.com
**CLARK HILL THORP REED**
301 Grant Street
One Oxford Centre, 14th Floor
Pittsburgh, PA 15222-4895
(412) 394-7711

Attorneys for Defendant
**APPLE INC.**

[01455413]

**CERTIFICATE OF SERVICE**

I hereby certify that on May 6, 2013 the foregoing was served upon all counsel of record via the CM/ECF Electronic filing system of the United States District Court for the Western District of Pennsylvania.

                              */s/ Danny P. Cerrone, Jr.*